

**SO ORDERED.**

**SIGNED this 02 day of April, 2007.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **ALLEN TRACY GREEN** | ) | **No. 06-14084** |
| | ) | **Chapter 7** |
| Debtor | ) | |

**MEMORANDUM**

This matter is before the court on the trustee's objection to an exemption claimed by the debtor. After consideration of the parties' briefs, the testimony of the debtor's spouse, and the arguments of counsel at a hearing, the court will sustain the trustee's objection.

The debtor has claimed an exemption for payments due him under the terms of an annuity issued in 2003, when the debtor was 26 years old. The annuity was not part of any retirement or disability plan, nor was it otherwise related to the debtor's employment. Instead, it resulted from a structured settlement of the debtor's wrongful death claim for the death of his

minor son. The annuity pays $2003.74 per month for 50 years certain and for the life of Tracy Green thereafter. The debtor cannot obtain a lump sum payment in lieu of the periodic payments, and the annuity contains spendthrift provisions that insulate it from attack by the debtor's creditors. After the annuity was issued in settlement of the wrongful death action, the debtor became disabled, and the payments from the annuity are now his sole source of support.

The debtor claims the exemption under the provisions of section 44-13-100(a)(2)(E) of the Georgia Code Annotated, which states that a debtor may exempt his right to receive a "payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . ." In a subsequent subsection, the Georgia legislature provided an exemption for "the debtor's right to receive, or property that is traceable to . . . [a] payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." O.C.G.A. § 44-13-100(a)(11)(B).[1] Both of these Georgia provisions are modeled on the federal exemption statute found at 11 U.S.C. § 522. Subsection (d)(10)(E) of the federal statute permits exemption of "a payment under a stock bonus, pension , profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . ," and subsection (d)(11)(B) allows an exemption for "a payment on account of the wrongful death of an in-

---

[1] The debtor has not attempted to use this provision because he was never dependent on his minor son.

dividual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

The parties have cited no case from a Georgia state court interpreting the relevant provisions of the Georgia code, but there are a number of federal cases interpreting the analogous provisions of the bankruptcy code. Where such is the case, and where a state has borrowed from similar federal legislation, federal courts may presume that the state legislatures intended what Congress intended. *Eilbert v. Pelican (In re Eilbert),* 162 F.3d 523, 526 (8th Cir. 1998); *Baumgart v. Alam (In re Alam)*, 2006 WL 3816765 (B.A.P. 6th Cir. Nov. 8, 2006); *Wilson v. Sergeant (In re Wilson)*, 305 B.R. 4, 15 (N.D. Iowa 2004) ("[T]he legislative history of federal exemption statutes, upon which state exemption statutes have been modeled, may be helpful in deriving the state legislature's intent.").

The house report describing the purposes of 11 U.S.C. § 522(d)(10)(E) states that it "exempts certain benefits that are akin to future earnings of the debtor." H.R. Rep. No. 95-595, at 362 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6318. This stated congressional intent has in recent years led judicial opinion to coalesce around the idea that the language in § 522(d)(10)-(E) is intended to exempt employment retirement benefits or the like. For example, in *In re Eilbert*, the Eighth Circuit held that an Iowa exemption modeled on the federal exemption did not allow an elderly annuitant to exempt her annuity because she had bought the annuity with the proceeds of her deceased husband's estate. Despite the fact that she was actually using the proceeds of the annuity as her retirement, the Eighth Circuit held that such an annuity was not within the statutory terms of "a pension, annuity, or similar plan or contract" because the payments she received from her single premium annuity were not "akin to future earnings." The court

found that "[t]he payments *do not replace lost income*, and the annuity was not purchased with contributions over time as part of a long term retirement strategy." *Eilbert*, 162 F.3d at 527 (emphasis added).

In addition to the legislative history of the bankruptcy statute, the Eighth Circuit employed the maxims of *noscitur a sociis* and *ejusdem generis*.[2] The Iowa exemption statute, like the Georgia statute at issue in the case at bar, narrows the exemption provided in the Bankruptcy Code from "stock bonus, pension, profitsharing, annuity, or similar plan or contract," to "pension, annuity, or similar plan or contract." Because the term "annuity" is broad and generic and the term "pension," with which it is closely associated, is more tightly defined as a retirement benefit, the court reasoned that the term "annuity" must be something like a retirement annuity, one funded by money traceable to wages or some other employment benefit rather than one purchased with monies entirely extrinsic to employment. *Id. at* 526-527; *accord*, *In re Michael*, 339 B.R. 798, 803-04 (Bankr. N.D. Ga. 2005) (employing *noscitur a sociis* and *ejusdem generis* to the same effect). Since the annuity payments in question were not akin to future earnings in that they did not replace lost income, they were not exemptible.

In a similar case, the District Court for the Eastern District of Michigan held that a debtor could not exempt payments under an annuity that had been bequeathed to her in her mother's last

---

[2] "Under the doctrine of 'noscitur a sociis', the meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it." *Black's Law Dictionary* 956 (5th ed. 1979). In the construction of laws, the "ejusdem generis rule" is "that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."*Id.* at 464.

will and testament. The trustee objected to the exemption because the debtor's right to receive payments was not premised on illness, disability, death, age, or length of service, as the federal statute required. In sustaining the trustee's objection, the court rejected the argument by the debtor that any annuity qualified as an annuity for the purposes of the exemption and that her annuity further qualified as payable "on account of [her mother's] death." Citing *In re Eilbert*, the court held that the debtor could not "satisfy the requirement that her payments are replacement for lost income or akin to future earnings, and thus her annuity did not qualify for an exemption under § 522(d)(10)(E)." *Weidman v. Shapiro*, 299 B.R. 429, 431 (E.D. Mich. 2003).

Some years after *Weidman* and *In re Eilbert* were decided, the Supreme Court took up the question of whether individual retirement accounts could be exempted under § 522(d)(10)-(E). The decision required an analysis of that section during which the Supreme Court, in deciding that IRAs met the requirements of the statute for exemption, noted that all the plans mentioned in the statute "provide a substitution for wages (by wages, for present purposes, we mean compensation earned as hourly or salary income), and are not merely savings accounts." *Rousey v. Jacoway,* 544 U.S. 320, 329 (2005). The Court emphasized this view by repeating it not once, but twice:

> The *common feature* of all these plans is that they provide income that *substitutes for wages* earned as salary or hourly compensation. This understanding of the plans' similarities comports with the other types of payments that a debtor may exempt under § 522 (d)(10)- all of which concern income that substitutes for wages . . . . What all these plans *have in common* is that they provide income that *substitutes for wages*.

*Id.* at 331 (emphasis added).

5

The Court's phraseology is notable because it uses the phrase "substitutes for wages" three times but never uses the broader term "support." In the case at bar, the debtor may well be using his annuity payments to support himself, but those payments are not "substitutes for wages," i.e., wages lost on account of the debtor's "illness, disability, death, age, or length of service." The payments are instead attributable to the wrongful death of his son, upon whom he was not dependent. If it is true that all the plans mentioned in the statute, including annuities, must somehow substitute for wages, then the debtor's annuity in this case cannot qualify for exemption because it lacks that feature.

If a debtor, whether of retirement age or not, could exempt any annuity payments he received, he could buy an annuity with his inheritance and thus exempt it from his estate. That would create a hole in the statute through which its legislative intent could be drained, and courts that have considered such a scenario have understandably rejected the debtor's argument. In *In re Michael*, the court held that a variable life annuity which was not funded over time but purchased by the debtor in a lump sum with the proceeds of his inheritance could not be exempted under section 44-13-100(a)(2.1)(C) of the Georgia code. The statute incorporates the provisions of 11 U.S.C. § 522(d)(10)(E), whose terms "stock bonus," "pension," and "profit sharing" the court held are –

> forms of retirement benefits that are paid regularly based on a debtor's employment and wages or salary. In other words, they are all forms of deferred compensation for services rendered. Thus, "annuity, or similar plan or contract" refers to benefit plans offered to employees or the self-employed as a means of future compensation after retirement.

*In re Michael*, 339 B.R. at 803. The court concluded:

6

> In this case, the Annuity Contract is not similar to the types of funds exempt under section 522(d)(10). Even though it provides Debtor with future income, that income is not a substitute for wages earned as salary or hourly compensation to Debtor . . . . Thus, since the Annuity Contract does not serve to replace lost income of Debtor in the future, it is not an "annuity or similar plan or contract."

*Id.* at 804.

The same result was reached in *Weidman v. Shapiro*, a case in which the debtor purchased an annuity with funds bequeathed to her by her mother. Affirming the bankruptcy court, the district court found that the proceeds of the annuity were not exemptible because they "were not 'akin to future earnings' because they did not replace lost income. *Weidman v. Shapiro*, 299 B.R. at 431 (citing *In re Eilbert*, 162 F.3d at 527-28).

In yet another inheritance case, *In re Collett*, 253 B.R. 452 (Bankr. W.D. Mo. 2000), the bankruptcy court found that payments under an annuity purchased with an inheritance were not exemptible under Missouri's exemption statute, which is virtually identical to § 522(d)(10)(E). The court noted that the debtors had produced evidence to persuade the court that the annuity was reasonably necessary for the support of the debtor. However, it held that "[t]he purpose of the exemption is to replace lost wages, such as those lost on account of the recipient's age, or for the support of surviving dependents (i.e., on account of the guardian's death)." *Id.* at 454 (citations omitted). The debtor had argued that his annuity was "on account of death" within the meaning of the statute, but the bankruptcy court rejected this argument:

> The express language of the statute exempts annuities "on account of death," but Robert's annuity was not on account of death; rather it was the result of, or "on account of," the trustee's choice of the form in which to give Robert his inheritance. If the trustee had chosen to make discretionary disbursements, there would be no question that the gift from Tille was an inheritance and nothing more. The

>   fact that the gift was *indirectly triggered* by his aunt's death and took the form of an annuity, does not make it exempt. Moreover, because Robert was not a dependent of Tille before she died, the annuity cannot be construed as a replacement for lost wages [Tille's] as Congress intended the statute to be applied.

*Id.* at 454-55 (emphasis added).

There are two recent cases factually similar to the case at bar, and in both of them the courts rejected the claim made by the debtor. In *In re Huscher*, No. 04-02200S, 2004 WL 2671705 (Bankr. N.D. Iowa Nov. 19, 2004), a wrongful death claim was settled by a lump sum payment and the purchase of an annuity in favor of the debtor. Following *In re Eilbert*, the court held that "[a] debtor's rights in payment are not exempt merely for being in the form of an annuity. Exemption depends upon the underlying nature of the asset." *Id.*, 2004 WL 2671705, at *2. Finding that the annuity in question did not provide benefits "akin to future earnings," the court rejected the debtor's argument that the annuity payments in question were made on account of the death of her husband, finding instead that "[t]he right to receive payments was not triggered by the event of his death as required under *In re Heubner*. It can be said that the annuity payments were triggered by the decision to settle the claim and invest in an annuity." *Id*. at *3. The court also observed that another subsection of 11 U.S.C. § 522 covered the exemption of wrongful death benefits: "Congress did not contemplate that payments arising from a wrongful death claim would be exempt under 11 U.S.C. § 522(d)(10)(E); it expressly provided an exemption for such payments under § 522(d)(11)(B)." *Id.* at *4. As previously noted, the Georgia exemption statute under review in this case contains specific exemption provisions for wrongful death benefits similar to those in 11 U.S.C. § 522(d)(11)(B).

8

Finally, in *In re Stover*, 332 B.R. 400 (Bankr. W.D. Mo. 2005), the debtor's mother had received an annuity in settlement of a wrongful death action she brought, and upon her death the annuity payments were directed to her son, the debtor. The debtor argued that the payments were exempt because they came from an annuity on account of the death of the debtor's father, but the court rejected this argument, noting that "[i]f the Missouri legislature had intended for any annuity created as the result of a wrongful death action to be included within subsection (10)(e), there would have been no need to create an additional exemption under subsection (11)." *Id.* at 403. The subsection (11) that the court referred to above is the equivalent of 11 U.S.C. § 522(d)-(11)(B) and section 44-13-100(a)(11)(B) of the Official Code of Georgia Annotated. Agreeing that the purpose of the exemption was to replace lost wages, the court concluded:

> As with § 522(d)(10)(E) of the Bankruptcy Code, the purpose of § 513.430.1(10)-(e) is to replace lost future earnings of a debtor, or a person on whom the debtor is dependent, related to employment, and is not intended to exempt annuity payments resulting from a personal injury or wrongful death settlement not related to employment or earnings.

*Id.*

The debtor relies principally on *In re Wommack*, 80 B.R. 578 (Bankr. M.D. Ga. 1987), in which the court construed the Georgia exemption statute in question here and determined that an annuity based upon a structured settlement for the wrongful death of the debtor's minor son was an annuity on account of the debtor's age, since at the time he was of retirement age. Of course, the debtor in the case at bar is nowhere near retirement age, and so the cases are factually distinguishable. To the extent the court in *Wommack* thought that the source of funds for an annuity

was irrelevant to its exemptibility, this court respectfully disagrees as do most other courts that have addressed this question.

Indeed, as previously discussed, most of the courts considering this question have tried to decide what Congress meant by the phrase "akin to future earnings," and they have decided that annuities purchased with inheritances or with the proceeds of wrongful death actions were not akin to future earnings, even if the payments were actually being used for support. Thus "akin to future earnings" means something more than just support. The courts have also frequently found that application of the principles of *noscitur a sociis* and *ejusdem generis* limits the statutory term "annuity" to the kind of tool used to compensate for earnings lost due to retirement or disability. This accords with the Supreme Court's finding that all the plans mentioned in the statute concern income that "substitutes for wages." Finally, the existence of another subsection within both the Georgia and the federal statutes indicates that the drafters duly considered and limited the extent to which a wrongful death recovery would be exemptible. It is not likely that they would approve the nullification of that subsection whenever a debtor bought an annuity with his recovery.

For the foregoing reasons, the court will enter an order sustaining the trustee's objection to the debtor's claim of exemption for his annuity payments.

###